## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROUZBEH ZAHEDI**<br>　　Villa E46 Frond E, Palm Jumeirah<br>　　Dubai, United Arab Emirates<br><br>　　　　　*Plaintiff,*<br><br>v.<br><br>**LISA PALLUCONI, in her official capacity as**<br>　　**Acting Director of the United States**<br>　　**Department of the Treasury,**<br>　　**Office of Foreign Assets Control**<br>　　1500 Pennsylvania Avenue, NW<br>　　Freedman's Bank Building<br>　　Washington, D.C. 20220<br><br>　　　　　*Defendant,*<br><br>and<br><br>**THE UNITED STATES DEPARTMENT**<br>**OF THE TREASURY, OFFICE OF FOREIGN**<br>**ASSETS CONTROL**<br>　　1500 Pennsylvania Avenue, NW<br>　　Freedman's Bank Building<br>　　Washington, D.C. 20220<br><br>　　　　　*Defendant.* | Case No. 24-cv-2924<br><br>**COMPLAINT FOR**<br>**DECLARATORY AND**<br>**INJUNCTIVE RELIEF** |

　　　　Plaintiff Rouzbeh Zahedi brings this Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") and its Acting Director, Lisa Palluconi, and in support of his complaint alleges the following:

## **INTRODUCTION**

1.      On July 24, 2024, OFAC issued a denial of Plaintiff's petition for administrative reconsideration which sought the rescission of his designation under Executive Order ("E.O.") 13224, as amended, and the removal of his name from OFAC's Specially Designated Nationals and Blocked Persons List ("SDN List"). In doing so, Defendants acted arbitrarily and capriciously in violation of the Administrative Procedure Act ("APA") by failing to provide a reasoned explanation for their denial decision, providing only conclusory statements, and treating Plaintiff differently than other similarly situated parties.

2.      Notably, Plaintiff's petition for administrative reconsideration proposed remedial measures that, if adopted, would negate the basis for his designation. Significantly, however, OFAC only issued one questionnaire seeking information in connection with assessing the arguments in the petition for administrative reconsideration, to which Plaintiff responded in a timely and substantive manner.

3.      On July 24, 2024, Defendant OFAC issued a denial to Plaintiff's petition for administrative reconsideration. OFAC's letter noticing its denial decision was generic and conclusory, lacking any kind of meaningful consideration of the information, arguments, and evidence provided in Plaintiff's petition or the supplemental submissions filed in support of it.

4.      In coming to its decision, OFAC misapplied its own regulations by conflating three distinct bases by which designees can pursue delisting under OFAC's procedures for seeking removal from the SDN List. Those procedures do not require that a petitioner argue each basis of delisting, nor exclusively pursue any particular basis for removal from the SDN List.

5.      In this case, however, although Plaintiff's petition for administrative reconsideration proposed remedial measures to negate the basis of his designation, OFAC's denial

letter states that Plaintiff's proposed remedial measures fall short because he "failed to demonstrate changes in circumstances," and that he "failed to provide sufficient evidence to reverse OFAC's finding" that he met the designation criteria under E.O. 13224, as amended.

6. In other words, Defendants denied Plaintiff's petition based on its determination that Plaintiff did not satisfy two arguments for delisting even though Plaintiff did not—and need not—raise those arguments, while failing to explain why the argument Plaintiff actually made was insufficient. Specifically, OFAC's denial letter failed to provide a reasoned explanation for Defendants' determination that Plaintiff's proposed remedial measures, if adopted, would not negate the basis for his designation, instead providing only conclusory statements without engaging with the substance of Plaintiff's proposed measures.

7. Moreover, by rejecting Plaintiff's proposed remedial measures and request to enter into a Terms of Removal Agreement ("TOR"), Defendants treated Plaintiff differently from similarly situated parties who have engaged in OFAC's administrative reconsideration process. Indeed, Defendants have entered into TORs with other parties based on nearly indistinguishable terms as those proposed by Plaintiff. Defendants failed to provide an explanation as to why they treated Plaintiff's proposal differently than those similarly situated parties.

8. Defendants' denial action constitutes clear error. Plaintiff has been forthcoming throughout the delisting process, having provided fulsome information and documentation to Defendants, both proactively and in direct response to OFAC's questionnaire. However, in denying Plaintiff's petition and providing no reasoned explanation for that action, Defendants have acted arbitrarily and capriciously and abused their discretion in violation of the APA. To remedy Defendants' clear error and mitigate the ongoing harm caused by Defendants' unlawful actions, Plaintiff respectfully requests this Court's intervention.

## JURISDICTION AND VENUE

9. This action arises under the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

10. This Court may grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Fed. R. Civ. P. Rule 57. This Court may grant injunctive relief in accordance with Fed. R. Civ. P. Rule 65.

11. Venue is proper in the District of Columbia as this is the district in which a substantial part of the events or omissions giving rise to the claim occurred. *See* 28 U.S.C. §§ 1391(b), (e).

## THE PARTIES

12. Rouzbeh Zahedi is and was at all times relevant to this complaint a national of Iran and Canada, and a resident of the United Arab Emirates ("UAE"). Plaintiff resides at Villa E46 Frond E, Palm Jumeirah, Dubai, UAE.

13. Plaintiff is sanctioned pursuant to E.O. 13224, as amended, and his name is identified on OFAC's SDN List.

14. Defendant OFAC is an administrative agency of the United States Department of the Treasury, located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington D.C. 20220. Defendant OFAC is responsible for maintaining and administering the SDN List. This includes by placing persons on and removing persons from the SDN List consistent with E.O. 13224, as amended, and the implementing regulations located at 31 C.F.R. Parts 501 and 594, the "Reporting, Procedures and Penalties Regulations" and the "Global Terrorism Sanctions

Regulations," respectively. Defendant OFAC was responsible for designating Plaintiff under E.O. 13224, as amended, and for denying Plaintiff's petition for administrative reconsideration.

15. Defendant Lisa Palluconi is the Acting Director of OFAC. In this role, Defendant Lisa Palluconi is responsible for overseeing and directing OFAC's operations, including the adjudication of petitions for administrative reconsideration. Defendant Lisa Palluconi is sued in her official capacity.

## FACTUAL ALLEGATIONS

### A. OFAC's Designation of Plaintiff

16. On November 3, 2022, Defendant OFAC designated Plaintiff under E.O. 13224, as amended, for allegedly having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, Hizballah and the Islamic Revolutionary Guard Corps–Qods Force ("IRGC-QF"), persons whose property and interests in property are blocked under E.O. 13224, as amended. Notice of OFAC Sanctions Actions, 87 FED. REG. 67,751 (Nov. 9, 2022). As a result of his designation, Plaintiff's name was added to OFAC's SDN List.

17. The legal consequence of Plaintiff's designation is that his property and interests in property within U.S. jurisdiction are blocked, and U.S. persons are generally prohibited from engaging in transactions or dealings with him. Moreover, persons who engage in certain transactions or dealings with Plaintiff risk exposure to sanctions themselves under E.O. 13224, as amended.

18. Concurrent with the designation action, OFAC issued a press release that set forth certain factual allegations ostensibly related to its determination that Plaintiff met the criteria for designation under E.O. 13224, as amended. Specifically, the press release alleged that Plaintiff

5

was a part of a "Gulf-based network of individuals and companies [that] were blending and exporting Iranian oil in support of Hizballah and the IRGC-QF..." Press Release, U.S. Dep't of the Treasury, Treasury Sanctions Oil Shipping Network Supporting IRGC-QF and Hizballah (Nov. 3, 2022). Further, the press release alleged that the network was "…us[ing] storage units in the Port of Sharjah in the United Arab Emirates, and blend[ing] products of Indian origin with Iranian oil to obfuscate the Iranian origin." *Id.*

19.  According to OFAC, the companies "then modified or created counterfeit certificates of origin and quality for the blended oil, which was then transferred for sale abroad." *Id.* OFAC's press release also alleged that Plaintiff "[w]orked with the network to help transport Iranian oil abroad and procure funds on behalf of Hizballah and the IRGC-QF..." *Id*. Further, OFAC alleged that Plaintiff "used his companies to transfer funds to IRGC-QF and Hizballah members[,] and coordinated activities closely with Mohamed El Zein [], a Hizballah member who was also part of the oil smuggling network and the son of a high-ranking Hizballah communications director." *Id.*

### B.    Plaintiff's Petition for Administrative Reconsideration

20.  OFAC administers regulatory procedures by which persons blocked pursuant to its regulations and identified on the SDN List may seek their removal from the SDN List. *See* 31 C.F.R. § 501.807. OFAC's delisting procedures allow interested parties to request reconsideration of their designations, stating that such parties "*may* submit arguments or evidence that the person believes establishes that an insufficient basis exists for the sanction or that the circumstances resulting in the sanction no longer apply." *Id.* (emphasis added). Further, "[t]he sanctioned person also *may* propose remedial steps on the person's part, such as corporate reorganization, resignation

of persons from positions in a blocked entity, or similar steps, which the person believes would negate the basis for the sanction." *Id*. (emphasis added).

21. On December 31, 2022, Plaintiff submitted a petition for administrative reconsideration to OFAC seeking the rescission of his designation and the removal of his name from the SDN List. This petition was made pursuant to OFAC's delisting procedures set forth at 31 C.F.R. § 501.807.

22. In his petition, Plaintiff proposed several remedial measures which, if adopted, would negate the basis for his designation. These remedial measures were designed to address the basis for Plaintiff's designation by impairing his ability to engage in the categories of commercial activities that OFAC alleged he engaged in which led to his designation, and by providing transparency over his business operations and personal finances. Plaintiff also indicated that he is open to considering any additional terms or conditions that would merit the rescission of his designation under E.O. 13224, as amended.

23. Plaintiff proposed these measures to address the concerns underlying OFAC's allegations, but not to remediate any conduct that had occurred because, in fact, OFAC's allegations are in error. Notably, Plaintiff's petition for administrative reconsideration did not say that the allegations were not disputed, as OFAC's denial letter would later claim. Rather, the petition noted that Plaintiff did not make any representations regarding the validity of OFAC's allegations against him or the factual bases it relied upon to designate him.

24. Specifically, Plaintiff proposed that he would wind down any businesses that he owns or controls that OFAC believes were used for business transactions involving the sale, transport, or supply of oil; and that he would provide OFAC with the names of banks and other

financial institutions that he uses for personal and business transactions on a semiannual basis for a five-year period.

25. Plaintiff also proposed to provide OFAC with copies of all invoices, bank account statements, and financial statements for the past five years, as well as for an ongoing basis for the next five years. According to Plaintiff those disclosures would evidence his own sources of income, as well as those of any companies that Plaintiff owns or controls, including pension payments, dividend payments, revenue generated from real estate investments, and any other sources of income. This documentation would include bank account numbers, dates, and amounts of all debits and credits, as well as a description of the purpose, and the name of the remitting party, of any deposits equivalent to $10,000 or more.

26. Further, Plaintiff proposed to provide documentation identifying entities that he owns or controls, whether such entities are generating income or not, as well as that of any companies in which he maintains a senior management position, advisory role, or board seat, on a semiannual basis for a five-year period. Moreover, Plaintiff proposed to disclose to OFAC for a five-year period any intention that he has to register, operate, or work for a business or entity; or be affiliated with the management, administration, or operational activities of a business or entity. This would include membership on the board of directors or an advisory board of any entity.

27. Plaintiff also proposed to disclose the names, titles, phone numbers, email addresses, physical addresses, and business units of the persons responsible for implementation of any compliance programs for any entity that Plaintiff owns or controls on a semiannual basis for a five-year period.

28. In addition, Plaintiff agreed that, to the extent permitted by local law, he would provide OFAC with copies of all compliance manuals and training materials for any business or

entity that he owns or controls, or has an ownership interest in, on an annual basis for a five-year period. This would include internal procedures on compliance with OFAC-administered laws and regulations.

29. Further, Plaintiff proposed to adopt and implement sanctions policies and procedures to include screening employees, customers, and vendors and suppliers against the SDN List, for any companies that he maintains ownership or control over in the future. To the extent he discovers a transaction involving any individual or entity on the SDN List, Plaintiff agreed to notify OFAC as soon as he discovers the transaction, to include identifying information of the parties involved and a description of the transaction.

30. Plaintiff further proposed that he would undergo a sanctions and anti-money laundering compliance audit upon OFAC's request for any company he owns or controls by an independent third party and provide the results of the audit(s) to OFAC.

31. Plaintiff further proposed to disclose, to the extent permitted by law, copies of meeting minutes, annual corporate reports containing details regarding revenue and expenses, and a list of all customer names for all entities that Plaintiff owns or controls to OFAC on an ongoing basis for a five-year period.

32. Plaintiff also proposed an agreement to not engage in any business with any entity or individual that is sanctioned by OFAC for an indefinite period of time. Under that agreement, Plaintiff would provide regular certifications on an annual basis for a five-year period, that he is not engaged with, and will not engage in, any transaction or dealings with persons sanctioned by OFAC including the IRGC, Hizballah, or persons or entities identified as agents, affiliates, or officials of those organizations. Plaintiff further proposed to certify, on an annual basis for a five-

year period, that he is not in violation of, and will not engage in violations of, any applicable U.S. sanctions or anti-money laundering laws, Executive Orders, and regulations.

33.     Furthermore, Plaintiff proposed an agreement to respond to any questions from OFAC regarding the proposed remedial measures within 60 days, or with respect to compliance with U.S. sanctions more broadly, including with respect to potential sanctions targets, for a five-year period

34.     Finally, Plaintiff proposed that, in the event of a breach of a Terms of Removal Agreement memorializing these remedial measures, that Plaintiff would not contest any re-designation action arising from that breach for a three-year period. Notably, by proposing that that his agreement to these remedial measures be memorialized in a Terms of Removal Agreement, Plaintiff was proposing to provide certifications and other representations to a United States federal agency such that those statements would be subject to criminal penalty if false.

35.     In exchange for implementing these proposed remedial measures, Plaintiff requested that OFAC rescind his designation under E.O. 13224, as amended, and remove his name from the SDN List.

36.     As noted in his petition, Plaintiff's proposed measure to wind down businesses that OFAC believes were used for transactions involving the sale of oil would address OFAC's allegations that Plaintiff helped transport Iranian oil, procured funds for Hizballah and the IRGC-QF, and transferred funds to members of those groups. Further, the petition argued that by agreeing to screen for, and certify that there are no transactions with Hizballah and the IRGC-QF, including members of the alleged oil smuggling network, OFAC would ensure that neither Plaintiff nor his companies assist or support the network or those groups in any manner. This would also ensure that there are no interactions between Plaintiff and Mohamed El Zein.

10

37. While Plaintiff did not engage in any such alleged dealings—either through his businesses or in his personal capacity—these measures were proposed to address OFAC's concerns, and would provide assurances that Plaintiff is acting consistent with U.S. sanctions and policy objectives. *See* Exhibit A—Plaintiff's Affidavit. Plaintiff adopted this approach to avoid a dispute with OFAC regarding the credibility of the evidence supporting its allegations which was not disclosed to Plaintiff at any time during the delisting process. *See* Exhibit A.

38. Plaintiff explained that several of the remedial measures would also provide transparency over his activities and finances—both personal and those of his current and future companies. Indeed, Plaintiff's petition argued that Plaintiff was willing to offer OFAC extensive information and documentation so that OFAC could verify and monitor his activities, and ensure overall compliance with U.S. sanctions. The petition further contended that this information and documentation would ensure that OFAC has the means to both identify and trace his funds and business revenues and evidence that none of those funds are being distributed, directly or indirectly, to Hizballah or the IRGC-QF. Moreover, Plaintiff offered to have independent third-party auditors verify such information, as well as ongoing activities to provide further assurance to OFAC that there are no additional compliance issues moving forward.

39. The petition was Plaintiff's first time seeking delisting, and none of the arguments, information, and evidence in support of his petition were previously presented to OFAC and were thus new information before OFAC at the time the submissions were made.

40. On January 6, 2023, OFAC acknowledged receipt of Plaintiff's petition for administrative reconsideration and assigned the matter the Case ID SDGT-30625.

41. On February 13, 2023, OFAC issued a questionnaire seeking additional, clarifying, and corroborating information in connection with the information and arguments presented in

Plaintiff's petition for administrative reconsideration. Specifically, OFAC requested personal identifying information, information on Plaintiff's financial accounts, transactions, and business activities, as well as information regarding Plaintiff's personal and business relationships. OFAC requested that Plaintiff respond to the questionnaire within 90 days, by May 14, 2023.

42. On May 12, 2023, Plaintiff requested a two-week extension to respond to OFAC's questionnaire. This request was made so that Plaintiff could finish gathering the documentation responsive to OFAC's questionnaire. OFAC granted Plaintiff's extension request on May 16, 2023, requiring that Plaintiff provide a response to the questionnaire by May 28, 2023.

43. On May 28, 2023, Plaintiff responded to OFAC's questionnaire and provided additional information and documentation responsive to its inquiries. This information included, for example, personal identifying information and documentation, a list of all his financial accounts, and a detailed accounting of Plaintiff's relationships with dozens of entities and individuals that OFAC inquired about in its questionnaire. Notably, Plaintiff provided extensive documentation—over 500 pages—of his account statements for each bank account over the span of five years leading up to the questionnaire response.

44. OFAC acknowledged receipt of Plaintiff's questionnaire response on May 30, 2023.

45. On August 28, 2023, Plaintiff, through undersigned counsel, followed up on the status of his petition for administrative reconsideration as it had been approximately 90 days since his responses to OFAC's February 23, 2023 questionnaire.

46. On August 30, 2023, OFAC stated that Plaintiff's "request for reconsideration remains under review. OFAC is working diligently to reach a decision concerning this case."

47. On March 14, 2024, Plaintiff again followed up on the status of Plaintiff's petition as it had been over six months since the last communication from OFAC, ten months since Plaintiff filed his questionnaire response, and over 13 months since OFAC's last questionnaire. Plaintiff requested that OFAC notify him as to when Plaintiff might receive either an adjudication of the petition, a request for a delisting interview, or an additional questionnaire. Plaintiff alternatively requested that OFAC provide an explanation for what is causing the delay in Plaintiff's case and what steps he can take to resolve that delay.

48. OFAC responded to that email on March 19, 2024, stating that OFAC was "moving towards a final determination. At the moment, it is our assessment that another OFAC questionnaire is unlikely and we are aiming to circle back with you on this case in the next 60-90 days."

49. On June 25, 2024, Plaintiff again emailed OFAC requesting the status of the case and whether an adjudication was imminent, or if there are any questions for which OFAC required information relevant to its consideration. Plaintiff alternatively requested that OFAC advise as to what is causing the delay in processing the matter.

50. On June 26, 2024, OFAC responded that it is "in the process of reaching a final determination and do[es] not anticipate sending an additional questionnaire but will keep you posted if we have any questions."

    **C.**    **OFAC's Denial of Plaintiff's Petition for Administrative Reconsideration**

51. On July 24, 2024, Defendants denied Plaintiff's petition for administrative reconsideration. In its letter noticing the denial action, OFAC stated that it "determined that [Plaintiff] has not submitted arguments or evidence establishing that an insufficient basis exists for" his designation.

52. According to OFAC's denial letter, Plaintiff "failed to provide sufficient evidence to reverse OFAC's finding that [Plaintiff] assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, Hizballah and IRGC-QF." Moreover, OFAC noted that Plaintiff "does not dispute the factual basis of his designation and makes no representations regarding the validity of OFAC's allegations against him or the factual bases it relied upon to designate him."

53. In addition, OFAC stated that Plaintiff "has not presented new information that diminishes the weight of evidence that originally provided a reason for OFAC to conclude that he materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of Hizballah and IRGC- QF."

54. Further, the denial letter stated that OFAC "acknowledges" Plaintiff's proposed remedial measures but that the proposed measures "failed to demonstrate changes in [the] circumstances that underlie [Plaintiff's] initial designation."

55. Finally, OFAC's letter stated that Plaintiff's petition for administrative reconsideration did not provide sufficient evidence that the basis for Plaintiff's designation was insufficient; or that the circumstances underlying his designation had changed.

56. OFAC's regulations do not require that a petitioner establish that an insufficient basis exists for their designation or that the circumstances resulting in the designation no longer apply. Indeed, as stated in OFAC's delisting regulations, parties "*may* submit arguments or evidence that the person believes establishes that an insufficient basis exists for the sanction or that the circumstances resulting in the sanction no longer apply." 31 C.F.R. § 501.807 (emphasis added). Further, "[t]he sanctioned person also *may* propose remedial steps on the person's part, such as corporate reorganization, resignation of persons from positions in a blocked entity, or

similar steps, which the person believes *would* negate the basis for the sanction." *Id*. (emphasis added). OFAC's public guidance reiterates these potential avenues to achieve delisting. *See* U.S. Dep't of the Treasury, Filing a Petition for Removal from an OFAC List, https://ofac.treasury.gov/specially-designated-nationals-list-sdn-list/filing-a-petition-for-removal-from-an-ofac-list.

57. The denial letter does not contain any assessment of Plaintiff's argument that the proposed remedial measures, if adopted, would negate the basis for his designation. Instead, the denial letter vaguely and conclusory fashion states that Defendants "acknowledge[]" them. Specifically, OFAC's letter does not state how those remedial measures are insufficient to negate the basis of Plaintiff's designation or why OFAC determined that they, if adopted, would not negate the basis for his designation.

58. Nor did OFAC provide any assessment of the information contained in Plaintiff's questionnaire response, or why that information was insufficient to support Plaintiff's delisting.

59. Rather, OFAC states that Plaintiff "has not presented new information that diminishes the weight of evidence that originally provided a reason for OFAC to conclude that he materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of Hizballah and IRGC- QF." As noted above, OFAC never disclosed any evidence the originally provided a reason for OFAC to make such a conclusion.

**D.    Harm Suffered by Plaintiff**

60. Defendants' designation of Plaintiff—and Defendants' denial of Plaintiff's petition for administrative reconsideration—has caused substantial harm to Plaintiff personally, professionally, and financially, damaging his reputation and upending his ability to conduct basic transactions to support his livelihood.

61. Specifically, OFAC's allegation that Plaintiff is connected to Hizballah and the IRGC-QF has resulted in the loss of commercial partnerships and business relationships. As a result, Plaintiff's business activities are at a standstill and have essentially been inactive for almost two years since his designation.

62. Further, the fact that Plaintiff's name remains on the SDN List has resulted in him losing access to the global financial system, as both his personal and business accounts have been closed due to his designation.

63. Moreover, Plaintiff is unable to leave the UAE due to his status as an SDN. Indeed, Plaintiff recently attempted to travel outside of the country for a trip with his family; however, when he arrived at the airport, the airline refused to issue him a boarding pass, which left Plaintiff no option but to cancel the trip.

## **LEGAL CLAIMS**

### **COUNT I**

DEFENDANTS' DENIAL OF PLAINTIFF'S PETITION FOR ADMINISTRATIVE RECONSIDERATION CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

64. Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

65. Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

66. Pursuant to 5 U.S.C. § 555(e), prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in

connection with an agency proceeding. Such notice must be accompanied by a statement of the grounds for denial.

67. OFAC promulgates procedures by which parties subject to its sanctions can petition for reconsideration of their designation and for delisting from the SDN List. 31 C.F.R. § 501.807. Pursuant to OFAC's delisting procedures, a designated person may "propose remedial steps on the person's part . . . which the person believes would negate the basis for designation." 31 C.F.R. § 501.807(a).

68. Defendants' letter noticing the denial of Plaintiff's petition merely states that they "acknowledge" the remedial measures, rather than providing a reasoned explanation why OFAC determined that Plaintiff's proposed remedial measures, if adopted, would fail to adequately address the basis for Plaintiff's designation under E.O. 13224, as amended. Instead, Defendants' denial letter states that Plaintiff failed to provide sufficient evidence of an insufficient basis for the designation or a change in circumstances.

69. By failing to consider the arguments, information, and evidence Plaintiff provided in support of his petition for administrative reconsideration, Defendants acted arbitrarily and capriciously in violation of the APA.

70. By denying Plaintiff's petition without providing a reasoned explanation as to why Plaintiff's arguments, information, and evidence were insufficient, Defendants acted arbitrarily and capriciously in violation of the APA.

71. By providing only conclusory explanations for their determination involving a central factual dispute, despite Plaintiff's submission of considerable evidence in conflict with that determination, Defendants acted arbitrarily and capriciously in violation of the APA.

72. By treating Plaintiff differently than similarly situated parties that were delisted pursuant to TORs based on similar terms as those proposed by Plaintiff, and by failing to explaint why Defendants were treating Plaintiff differently than such similarly situated parties, Defendants acted arbitrarily and capriciously in violation of the APA.

73. By requiring that Plaintiff demonstrate an insufficient basis for his designation and a change in the circumstances underlying his designation, Defendants acted arbitrarily and capriciously and contrary to their own regulations at 31 C.F.R. § 501.807, in violation of the APA.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Issue an order vacating OFAC's denial of Plaintiff's petition for administrative reconsideration, with instructions to OFAC to reconsider that denial, determine whether Plaintiff's proposed remedial measures—standing alone—if adopted would negate the basis of designation, or whether Plaintiff continues to meet the basis for designation under E.O. 13224, as amended;

B. Order Defendants to produce unclassified summaries of classified or otherwise privileged information contained in the administrative record, which—together with the unclassified version of the administrative record—apprises Plaintiff of the reasons for his designation and the denial of his petition for administrative reconsideration;

C. Grant an award to Plaintiff of his costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et* seq., and any other applicable provision of law; and

D. Grant such other and further relief as the Court may deem just and proper.

Dated: October 16, 2024

                                      Respectfully submitted,

                                      */s/ Erich C. Ferrari*
Erich C. Ferrari, Esq.
Ferrari & Associates
1455 Pennsylvania Ave., NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
D.C. Bar No. 978253

*Counsel for Plaintiff*